THE AMERICAN COLONIZATION SOCIETY

*vs.*

FERDINAND C. LATROBE, JR., AND JAMES W. HAR-
VEY, JR., TRUSTEES, ET AL.

STATE OF MARYLAND

*vs.*

THE AMERICAN COLONIZATION SOCIETY,
FERDINAND C. LATROBE, JR., AND JAMES W. HAR-
VEY, JR., TRUSTEES, ET AL.

THE AMERICAN COLONIZATION SOCIETY

*vs.*

FERDINAND C. LATROBE, JR., AND JAMES W. HAR-
VEY, JR., TRUSTEES, ET AL.

STATE OF MARYLAND

*vs.*

THE AMERICAN COLONIZATION SOCIETY,
FERDINAND C. LATROBE, JR., AND JAMES W. HAR-
VEY, JR., TRUSTEES, ET AL.

*Escheat: when applicable; not to trusts. Trustees: to pay
"net rents"; duties not merely nominal; rights of bene-
ficiaries and heirs of deceased trustees. Commis-
sions: laches; American Colonization Society;
duties of trustees to defend trust; coun-
sel fees. Equity pleading and
practice: colloquies between
court and counsel;
part of record;
costs.*

In a strict sense, escheat in Maryland is as at common law,
and is applicable only to that which can be the subject of
tenure, for the reason that it represents a reversionary interest
or right of the law to take for want of a tenant.     pp. 528, 529

Where the creator of the trust left heirs and did not die intestate, the essential requirements for reversion to the State of Maryland by way of escheat are lacking.          p. 529

Where property does not escheat, the State has no interest therein, and has no standing to object to a distribution account distributing money in the hands of trustees.          p. 529

In interpreting a trust, courts endeavor to seek out the intention of the creator of the trust, and when it is ascertained to give it effect so far as it is compatible with the language employed.          p. 530

The trustees in the deed of trust derive their appointment and the authority for the management of the property, not from the beneficiary but from the creator of the trust.     p. 531

In so far as they are accountable, their accountability is to the courts exercising equity jurisdiction over the property and the trustees.          p. 531

The duty imposed by the deed upon the trustees of paying the "net rents" to the beneficiary implies that there are duties imposed upon them for the upkeep of the property, etc., which are not merely nominal.          p. 532

The American Colonization Society, the beneficiary under the deed of trust of Caroline Donovan, has no right to have a court of equity decree a transfer of the legal title to the property to them by the trustees.          p. 533

While the trust declared in the deed of trust of Caroline Donovan in favor of the American Colonization Society is void as against the rule against perpetuities, yet the legal title in the trustees, after twenty years, is unassailable as against all persons not under legal disability.          p. 533

Where the trustees for a long number of years charged the beneficiary ten per cent. for their services in collecting rents and caring for the property, the beneficiary can not be heard at the expiration of that time to object to such a charge.     p. 535

*"Vigilantibus non dormientibus leges subveniunt."*     p. 535

Where the heirs of the creator of a trust endeavor to break down and destroy the trust, and to secure to themselves the

property conveyed by the deed, it is the duty of the trustees to avail themselves of apt legal means to sustain the trust, and they should be allowed reasonable counsel fees for so doing.

p: 537

The fee to be allowed is to be considered in view of the services rendered; where, in allowing a fee, the Court does not abuse its discretion, its action will not be disturbed by the Court of Appeals.                                      p. 538

Where a colloquy between counsel and the Court was for the purpose of clarifying and narrowing the issues to be presented, it is properly included in the record, and is taxable as part of the costs.                                       p. 539

*Decided April 3rd, 1918.*

Four appeals in one record from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The causes were argued together before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William G. Johnson* and *D. K. Este Fisher,* for the American Colonization Society.

*Philip B. Perlman, Assistant Attorney General,* and *Ogle Marbury, Assistant Attorney General,* (with whom was *Albert C. Ritchie, Attorney General,* on the brief), for the State of Maryland.

*Eugene O'Dunne,* for the trustees.

STOCKBRIDGE, J., delivered the opinion of the Court.

This case has been so recently before this Court in two previous appeals that any recital of the facts out of which it arises is unnecessary.

All of the essential facts will be found in the very full opinion filed in the case of *The American Colonization Society* v. *Robert Soulsby, et al.,* 129 Md. 605, and the second of which appeals, decided less than a year ago, will, be found in 131 Maryland, 296.

The present record contains four separate and distinct appeals, all of which raise questions of law rather than questions of fact, so that a brief statement will suffice, as these are successively considered.

The appeals numbered respectively 41 and 43 are appeals by the State of Maryland, the one from an order of Court sustaining a demurrer to a petition filed on behalf of the State, by which it was sought to have the property involved in the case declared escheated to the State, as the result of the decision in this Court in the case in 129 Md., and the second of the appeals now to be considered is from the action of the Circuit Court in overruling the exceptions filed on behalf of the State to the auditor's account, by which a balance of money in the hands of the trustees was audited to be paid to the American Colonization Society. It will tend to simplify the case now before the Court to dispose of these two appeals before considering the others.

As appears from the prior history of this litigation, Caroline Donovan executed a deed to certain named trustees of fee simple property in the City of Baltimore, for purposes in that deed fully set forth. She also executed a will disposing of the property of which she died seized and possessed.

Long after the execution of the deed, and after her death, proceedings were instituted by her heirs to have the deed of trust set aside, because by the terms of that deed it was claimed that the instrument violated the rule of perpetuities. · By the opinion of JUDGE PATTISON, speaking for this Court, in the case of 129 Md., that contention was sustained and the deed set aside, but a recovery of the property was refused to the heirs, because of the uninterrupted adverse possession of the trustees for a period in excess of twenty

years. The State of Maryland then intervened, and by its petition sought to have the property in question declared escheated to the State. This petition was demurred to, the demurrer sustained and petition dismissed, and this presents the question involved in the appeal in No. 41.

A number of cases have been cited by the Assistant Attorney-General to support the State's contention, but they are for the most part without any application in the present instance, for the reason that they are based on statutes adopted in the States where those cases have arisen, and the Courts were called on to deal with a claimed escheat upon the basis of a proper interpretation of the statute. In this State there is practically no statute which is applicable, the section in Article 57 of the Code having to do mainly with a question of limitations; and the provisions contained in Article 93 relating only to personal property. But there have been numerous adjudicated cases in this State dealing with the subject of escheat, wherein the subject has been fully considered. These are to be found as early as *Casey v. Inloes,* 1 Gill, 506, and *Hammond v. Inloes,* 4 Md. 138; *Matthews v. Ward,* 10 G. & J. 443; and as late as the case of the *George's Creek Co. in Liquidation,* 125 Md. 595.

The general doctrine, which has become the accepted rule of law in this State, is that laid down in the case of the *Rock Hill College v. Jones,* 47 Md. 17, and a careful examination of the cases discloses insurmountable obstacles against any recovery by the State of the property conveyed by Mrs. Donovan to her trustees, for two reasons: in the first place, she did not die without heirs; and in the second place, she did leave a will by which all of the rest and residue of her estate was devised and bequeathed.

The rule of escheat in this State is approximately that of the common law, and is clearly set out in 10 R. C. L. 604, in part as follows: "In a strict sense escheat at common law is applicable only to that which can be the subject of tenure, for the reason that it represents the reversionary interest or

right of the lord to take for want of a tenant. * * * In a trust estate the trustee holds the legal title, and is competent to perform the necessary services; therefore, upon the death of the *cestui que trust* intestate and without heirs, the trustee takes the absolute title clear of the trust, and this right to take for his own use extends to the heir of the trustee."

This summary is a deduction from the English cases upon the subject, and in its concluding part is not entirely in harmony with the rule as recognized in this State in *Mathews* v. *Ward*, 10 G. & J. 443. It, therefore, follows that under the common law the trustees were competent to receive and hold the property as against the State, because they could render the service required by the feudal principle of tenure; that Caroline Donovan left heirs and did not die intestate and, therefore, the essential requirements for a reversion of the property to the State of Maryland by way of escheat are lacking in this case, and the order appealed from must in this particular be affirmed.

Having reached the conclusion that the property can not be escheated to the State, it necessarily follows that the State has no present interest therein, and not having a present interest in the property, it has no standing to object to the distribution account disposing of the money now in the hands of the trustees. *Wagner* v. *Freeny*, 123 Md. 24, and cases there cited. The appeal in No. 43 must, therefore, be dismissed.

The appeal Numbered 40 is the one which presents the greatest difficulty. This is the appeal of the American Colonization Society against the trustees from the action of the Court in sustaining a demurrer of the trustees to a petition of the appellant, and dismissing that petition.

The attitude of the Colonization Society at this point is somewhat anomalous. For a long series of years the American Colonization Society had made no claim to any interest in the property involved in this litigation, other than that of a beneficial use, as the *cestui que trust*, under the terms

of the deed of Mrs. Donovan. As such it had received quarterly remittances from the trustees named in Mrs. Donovan's deed, and their successors, without any question of any character, so far as is disclosed by the Record in the several appeals, which have come to this Court.

When the provisions of that deed were declared void the attitude of the Colonization Society immediately changed, and the claim now put forth in its behalf is that the trustees named by Mrs. Donovan were its agents; that the property belonged to it, or at any rate that there was only a bare legal title in the trustee, which the society at its will and pleasure is entitled to have transferred to it, working a merger of the legal and beneficial title; that the trust upon which the property was held involved no active duties to be performed on the part of the trustees, and for that reason as well the trustees should be required to transfer to the society the legal title held by them. As a statement of an abstract legal principle, without reference to the facts of a particular case, there is ample law to support most of the argument advanced on behalf of the Colonization Society.

The difficulty arises, however, when an attempt is made to apply these principles to the facts, as they have developed and exist in the present case. In most instances in interpreting a trust Courts endeavor to seek out the intent of the creator of the trust, and when it is ascertained to give effect to it as far as is compatible with the language employed.

There can of course be no pretense that it was the purpose of Mrs. Donovan to transfer the entire corpus of the estate conveyed by her to the American Colonization Society. If that had been her intent, it would have been a far simpler matter to accomplish, than to endeavor to create a trust of the character which she did. So far as any intent upon her part was concerned, it is manifest that what she had in mind was the creation of a legal estate, and a beneficial estate in the same property, but without their coalescing.

But Mrs. Donovan's purpose is not now the controlling element involved in this proceeding.  This Court has already declared her deed to be void because transgressing a fundamental rule of the policy of this State.  From this it follows that the petitioner, the American Colonization Society, can gain no assistance whatever from the fact that it was named as beneficiary in the Donovan deed, nor any right accrue to it, legal or equitable, because of that deed, and, therefore, the present contention of the society carried to its logical result would exclude the American Colonization Society from any benefit whatever, because of the deed of Mrs. Donovan to Latrobe and Harvey, as trustees.

The deed did convey to them a legal estate, the vice of the deed lay rather in the beneficial interest sought to be created under it.  Messrs. Latrobe and Harvey were not trustees by virtue of any appointment of the American Colonization Society.  If they had been, there would have been more ground for the present contention of that society.  The trustees were not in any proper sense the agents of the society. They derived their appointment, their power with regard to the property, their authority for its management from Caroline Donovan, not from the society.  Hence, their possession of the premises was in no manner the possession of the petitioning society.  So far as they were accountable, their accountability was to the Court or Courts exercising equity jurisdiction in the City of Baltimore, an entirely different matter from what would have been the case had they derived their powers from, and been made accountable to, the American Colonization Society.

The cases of *Lee* v. *O'Donnell,* 95 Md. 538, and *Potomac Lodge* v. *Miller,* 118 Md. 417, relied on by the petitioner, both turned on the intent of the creator of the trust, which as already stated, can not be given controlling effect in the present case.  The first of these two cases leads up, however, to the other contention of the petitioner, that the estate of the trustees is a bare legal title, without active duties to be performed, and that the *cestui que trust,* or individual or cor-

poration which had received the benefit of the trust is entitled to a transfer of the legal title.

In the case of *Lee* v. *O'Donnell* this was held to be true, for the reason that the sole duty in that case to be performed was the selection of a house, and when selected, the house was to vest in fee in the children of the testator,—the trustee was not instructed to rent the property, or told what use should be made of it.

There is a long line of cases in this State dealing with the question of coalescing of legal and equitable estates, by reason of no active duties to be performed by the trustees. *Warner* v. *Sprigg*, 62 Md. 14; *Thompson* v. *Ballard*, 70 Md. 10; *Brillhart* v. *Mish*, 99 Md. 447; *Raffel* v. *Safe Deposit & Tr. Co.*, 100 Md. 141, and *In re Hagerstown Trust Co.*, 119 Md. 224, are but illustrations of them.

The case of *Johnson* v. *Safe Dep. & Tr. Co.*, 79 Md. 18, in which the opinion was prepared by the late CHIEF JUDGE McSHERRY, was a case in which under the terms of a will there were created co-extensive legal and equitable estates for the benefit of the testator's daughters. By the terms of the will the trustees were authorized to hold the property, and pay the rents and profits thereof equally to and for the benefit and use of the daughters. In that case the question of the intent of the testator was largely controlling of the conclusion reached. If now, in the present case we could have regard to the intent of Mrs. Donovan, it will be noted that the trustees were directed to pay the *net* rents; the use of this expression "net rent," would carry with it as a necessary implication, that it was the purpose of the grantor that the trustees should continue to hold the legal title of the property, attend to its upkeep, and pay over the income which remained, and that is exactly what the trustees in this case did.

The duties performed by them can not be characterized as nominal merely; they involved the rental of some five or six warehouses, attending to the taxes, insurance, repairs, the installation of an elevator, the rebuilding of a front wall, and other similar duties which were more than mere incidental

repairs, and went to the permanent betterment of the property, and was reflected by the increase in the rentals derived by them. In so far as the contention, made in the petition now under consideration, rests upon the lack of active duties to be performed, it must fail.

It is presented for the consideration of the Court, that since the deed of Caroline Donovan has been declared null and void, because, offending the rule against perpetuities, that the legal estate, as well as the beneficial, must fail. Such a proposition is unsupported by the authorities in this State. *Grove* v. *Disciples,* 33 Md. 451; *Gump* v. *Sibley,* 79 Md. 165; *Trustees of Zion Church* v. *Hilken,* 84 Md. 170; *Regents* v. *Calvary Church,* 104 Md. 635; *Dickerson* v. *Kirk,* 105 Md. 638; *Mills* v. *Zion Chapel,* 119 Md. 510; *Novak* v. *Trustees of Orphans' Home,* 123 Md. 161. In each of the cases mentioned a conveyance of certain property had been held void; nevertheless, the legal title in the trustees was sustained, for the reason stated in *Grove* v. *Trustees,* 33 Md., *supra,* that: "The deed, even if void, could not be less than color of title, and entry under it would constitute adverse possession to the extent of the boundaries contained in it, and a continuance of this possession for twenty years would perfect the title against all persons not under legal disability."

In all of these cases the Court had to deal with the question of the legal title, and confirmed it as being in the trustees, without reference to the effect on the equitable or beneficial title. Following these cases, therefore, it is clear that the title of the trustees to these several lots of ground and improvements is unassailable as against all persons not under legal disability.

It follows from what has been said, that the order of the Circuit Court sustaining the demurrer to the petition of the American Colonization Society, to require a transfer to it of the legal title, and dismissing that petition, will be affirmed.

No. 42. This appeal is from the action of the Court overruling the exceptions of the Colonization Society to certain items appearing in the auditor's account. The important

ones to consider are the objections now made to the allowance to the trustees of commissions at the rate of 10% on $85,520.51; to the allowance to the attorneys for the trustees of a fee of $4,000—and to the amount audited, at the suggestion of the counsel for the trustees, to the American Colonization Society, $2,074.26. The account to which these objections are made covers a period of thirteen years, a fact which must be taken into consideration in passing upon these exceptions.

The appellant relies apparently for its objection to the commissions, on the case of *Abell* v. *Brady,* 79 Md. 94; the facts of that case were quite different from those presented in this Record. It appeared there that the estate upon which the trustees were to receive commissions was in receipt of an annual income of approximately $160,000; in this case the commissions asked, and which by the action of the Court were allowed, were at about the rate of $600 per annum, during the period covered by the account, or a difference between $8,000 and $600 per annum, as commissions to the trustees for the service performed by them. The opinion of CHIEF JUDGE ROBINSON in the *Brady case* held, not as a question of law, but as a question of fact, that considering the size of the annual income of the estate, 5% thereon was a fair commission to be paid to the two trustees. In so finding he used this language: "It is a matter largely in the discretion of the Court, its reason and judgment, taking into consideration all the facts and circumstances surrounding the trust."

In other cases it has been held that 6%, 8% and even 10% was not an unreasonable compensation to trustees for the services performed.

When, how or by whom a rate of 10% as commissions to the trustees was first established in this case, does not appear, but it is shown that quarterly statements of account have been regularly rendered by the trustees to the American Colonization Society, in which commissions were deducted

at the present proposed rate, and no objection has been raised
to such allowance by the Colonization Society, or any one
representing it, until the statement of the auditor's account
herein.   The trustees may have been lax in permitting so
long a period as thirteen years to elapse without a statement
of account in the Court, but it was within the power of the
Colonization Society at any time during that period, by
proper application, to have had the trustees render to the
Court a statement of account; this, however, they did not do,
nor even raise an objection to this allowance when it was
brought to its attention each quarter, by the accounts fur-
nished by the trustees.   It would be most inequitable now
to permit it to be heard to object, when by a long continuous
course of conduct, the trustees had every reason to believe
that such an allowance was entirely acceptable to the Coloni-
zation Society.   No better condition of facts could be pre-
sented than is done by by this Record, for the application of
the maxim "*Vigilantibus non dormientibus leges subveniunt*".

It will not do to take the total commissions allowed for a
period of thirteen years, and then because they seem large,
to say that the charge is an improper one, when the services
which have been rendered have extended over the same period
of time, and involved permanent betterments to the property,
which have been paid out of the income instead of the corpus,
with a permanent benefit to the estate and a resultant increase
of the annual revenue.

During the period covered by the account, there has been
paid to the American Colonization Society, in the quarterly
payments mentioned, $41,006.89, or if we add to this the
sum now audited to it by the present account, the total pay-
ments to that society will be $43,081.15.

The imputation in the brief of the exceptant of the great
disproportion between the amount of the rents collected, and
the amounts paid over to the Society, is hardly warranted
by the facts of the case.   Thus no account is taken of $15,-
528.03 paid in taxes and assessed street benefits; or of

$5,200.50 paid for insurance; or of $1,002.23 paid for water rent; or $2,273.35 paid for the permanent betterments, which total $24,004.11; and if there then be added to this sum, the amount paid to and audited to the society, there has been expended from the $85,520.51 of collections, $67,-025.26, which leaves a difference of $18,435.25, used in making of current repairs on the several warehouses during a period of thirteen years, the payment of commissions and counsel fees to which the estate has been subjected. When all of these elements are taken into consideration, as was pointed out in the case of *Abell* v. *Brady, supra,* should be done, the allowance for the commissions is not so extravagant that this Court can say that the Circuit Court of Baltimore City abused its discretion in overruling the exceptions taken upon this ground.

The counsel fee, which forms another ground of exception, was of $4,000. Some comparatively recent cases have dealt directly with allowances of counsel fees, under somewhat similar circumstances, and but little need be said beyond referring to them. See *Griffith* v. *Dale,* 109 Md. 700, and *Taylor* v. *Denny,* 118 Md. 124. In the last of these cases, JUDGE BOYD reviews the adjudicated cases in this State upon the subject, with his accustomed thoroughness and acumen, and after quoting at considerable length from the *Griffith* v. *Dale* case, he says: "It may be said as a general proposition that the right of a trustee to employ counsel, and pay him out of the trust fund, is thoroughly established when the Court can see that it is necessary for the proper administration of the trust for the trustee to have legal advice, or the aid of an attorney. Of course, that right includes cases where it is necessary or proper for the trustees to be represented in Court in defense of the estate or some part of it."

Counsel for the society lay special emphasis upon the fact that when the petition was filed on behalf of the Donovan heirs, they offered the trustees to undertake the conduct

of the case and bear all the expenses, and that, therefore, it was unnecessary for the trustees to be represented by counsel, and at all events it was unnecessary for them to be so represented upon the appeals which were taken to this Court. While conceding the value of the services rendered by the counsel to the trustees, the intimation is that the trustees should regard the employment as in the nature of a luxury, to be paid for out of the private purse of the trustees, and not chargeable against the income or corpus of the estate in their hands.

It must be borne in mind in considering this exception that the employment of counsel, and the taking of an appeal by the trustees, had received antecedent authorization by the Court, in which jurisdiction was being exercised over the fund.

In their petition the heirs of Mrs. Donovan endeavored to entirely break down and destroy the trust which she had attempted to create, to dispossess the trustees, and to secure to themselves the property which had been conveyed by her deed. Under such circumstances it was not only proper, but the plain duty of the trustees to avail themselves of apt legal means to sustain the then existing trust. Not to have done so would have been a dereliction of duty upon their part. It was not merely a contest between two parties to settle their rights *inter sese,* but one which had for its object the annihilation of the trust *in toto.*

Nor at that time was it possible for the trustees to know what might be the attitude of persons claiming to be interested in the property, nor even who might ultimately be held entitled to the property. Such a claim might even extend, as does that of the present petitioner, the American Colonization Society, to the destruction of the trust, and the appropriation, not merely of the income of the estate, but the corpus as well. As to all parties, therefore, the trustees had a clear duty to perform, which could only be performed by the aid of able and experienced counsel.

The case of *Warburton* v. *Robinson,* 113 Md. 24, cited by the appellant in this appeal, is hardly in point, as the appeal in that case was dismissed for technical reasons, incident to the delay in the transmission of the Record, and the facts disclosed in the Record were entirely dissimilar from those appearing in this case.

No more delicate duty is ever presented to a Court to perform, then the determination of what is a reasonable counsel fee to be allowed. Much necessarily depends upon the circumstances of each particular case. In this case we have the certificates of four members of the bar of recognized ability and high standing, as to the proper fee to be allowed. As opposed to this is an attempt to invoke a rule of the Baltimore City Court to the effect that the case having been set for hearing on bill and answer, the allegations of the answer, not being controverted by evidence, are to be taken as true, and for that reason any claim for a fee chargeable against the fund in the hands of the trustees, should be disallowed. This objection is entirely technical.

Some of the evidence taken at the hearing was intended to support the appellant's contention that it, through its chosen attorneys, took the lead in the contest. But it is not perceived how any injury will be done to either party by taking the record as it is, and considering both the testimony and the certificate of counsel. The services rendered involved at least two hearings, one of them quite lengthy, before the Circuit Court, and the argument of two appeals in this Court. While the fee allowed seems large, its reasonableness and propriety must depend upon the amount of labor which the conduct of the litigation, in which the services were rendered, entailed. As compared with the allowances which have been approved in the *Heating Co.* v. *Whitelock,* 120 Md. 408; *Title Co.* v. *Burdette,* 104 Md. 671, and the case of *Friedenwald* v. *Burke,* 123 Md. 511, the allowance of the fee was not so excessive as to amount to an abuse of the discretion which rests with the trial Court in such cases.

The order from which this appeal is taken will accordingly be affirmed.

Objection was made by the counsel for the American Colonization Society to the incorporation into the record in this case of certain papers. There is but one of those papers mentioned in the memorandum, which was in fact so incorporated, namely, the colloquy between counsel and the Court, which is attached to and preceded the testimony included in the record. It is impossible to accept the view presented by the solicitor for the American Colonization Society. The evident purpose of the colloquy was to clarify and narrow, as closely as possible, the issues to be presented to the Court. That was in large measure accomplished, and has been of most material assistance to the Court in disposing of the present appeal. The cost of its inclusion will, therefore, be treated as part of the costs of these cases.

> *Orders appealed from affirmed in Nos. 40, 41 and 42, and appeal in No. 43 dismissed; the costs to be paid by the Trustees out of the income now in their hands.*